Judge Mills
delivered the opinion of the court.
Wathan, the defendant in error, filed his bill in the court *316 below against Pennebaker, the plaintiff, charging, that he rented of the said Pennebaker, as guardian to the heirs of Michael Couchman, deceased, a tract of land and mill, and executed an agreement, wherein, among other things, he stipulated completely to repair the stone wall under the grist mill-house, in a strong and workman like manner, by or before the first day of October, 1809, and to raise the present crib under the said grist mill three logs higher, and fill it well with stone, so soon as he got into possession. He then states, that before the time arrived that he was to build said wall, the said Pennebaker and himself made the parol agreement that he should, instead of building the wall according to the article, build it “somewhat variant therefrom." That the building of the wall under the article was to be allowed out of the rent—that the change by parol was according to Pennsbaker’s request, and for his benefit as guardian, and for his accommodation to save the rent—that he built the wall according to contract, and that it was accepted by Pennsbaker, having been first examined and valued by workmen. That Pennebaker commenced a suit on said article, in covenant, against him for not building said wall agreeably thereto—that he made every effort in his power by pleading, and then offering proof to shew the contract about the wall altered by parol, and that it was finished according to the alteration, but that Pennebaker objected to the proof, and in strictness of common law it was rejected by the court below, and that a judgment was obtained against him for $150, and that this court had affirmed the decision of the court below. He then prays for and obtained an injunction against the judgment at law.
Pennebaker, in his answer, admits the lease and its stipulations, as set forth by Wathan, and that he made a parol agreement to change the building of the wall, and alledges that, the agreement, as changed, was, that instead of rebuilding the wall from the foundation up to the sills of the mill-house, it should be built to the height of three feet above high water mark—that strong heavy sills should be laid upon it—that upright posts should be tenanted in the sills extending therefrom to the sills of the house, and that said posts and the space between the walling and the house should be weather-boarded, it being thought by himself and others that it would be better to repair the wall that way than to build it all the way of stone up to the house, *317 as originally done. He then admits the complainant built a wall which was passed upon him for three feet above high water mark—that the wall so built was examined by workmen and valued, and that the complainant was allowed therefor in the rent, as well for the framing and weather-boarding, which was not then done, but to be done, to the amount of one hundred and fifty dollars; and he exhibits the written valuation of the workmen. He then denies that the framing or weather-boarding was ever made or done according to the parol agreement or valuation—or that the upright posts in the sills were inserted upon the wall, and insists that in consequence thereof the whole were washed away by the floods, and that the wall was not three feet above high water mark. He admits that on the trial of the action at law he objected to the testimony of the parol agreement, and contends that he did it rightfully, because the parol contract had not been complied with, and that as far as it was, it had proved useless. He alledges that he has caused a new wall to be built, for the building of which he had employed and paid the complainant, resting on the faith of the verdict, and insists that if he had not rebuilt it, it would have been the duty of the complainant to have done so without any compensation therefor. After the cause had progressed regularly to trial, the circuit court perpetuated the injunction with costs. To reverse this decree this writ of error is prosecuted; and the errors assigned question the merits of the decree.
A bill in chancery should alledg the case so precisely as to enable the chancellor by inspection to determine if he has jurisdiction, and decide on the proper decree.
The bill of the complainant, in the present case, furnishes a specimen of the lax habits too often indulged in chancery pleading in this country. Every bill in chancery ought to state the whole case so completely and circumstantially that the chancellor could, from its face, see whether he had jurisdiction or not, and could tell precisely what decree to render in favor of the complainant, supposing his bill to be true, unless the facts are out of the complainant’s power, or are retained in possession of his adversary, so that a disclosure becomes necessary, or some other circumstance exists, which may justly form an exception to the rule. No such circumstance, however, exists, or is pretended, in the present case. The complainant was possessed of the whole matter: yet, after shewing the written contract, he has contented himself with saying, that he and the defendant had made a parol agreement to build the wall “somewhat variant therefrom." What that agreement was, whether *318 adequate to discharge the covenant, or how much it varied from the written agreement, or whether it was such an one as gave the chancellor jurisdiction, or as equity would enforce, he has left to conjecture, or to be collected from the answer of the defendant or proof in the cause, as it might thereafter turn out. Not, however, positively determining that his bill is so defective that no relief ought to be afforded him, or ending his case on the want of jurisdiction, on the face of his bill, the court will give him all the benefit which he can derive from the answer of the defendant, or proof in the cause. The defendant sets out what the parol agreement was, and unless we take his statement, we cannot ascertain what it was; for no witness details it. But the defendant denies its fulfilment, or its being accepted as complete. The proof, however, shews that the work never was completed. The valuation of the workmen, one of whose depositions is taken in the cause, shews that it was not done. Sundry questions asked by the complainant seems to admit it; and to evade the effect of an existing deficit when the wall washed away, he endeavors to excuse it by proving that if the wall had been completed, at the time it went off, the flood would have taken the mill-house with it, and that his time to complete the weather boarding was enlarged by the defendant in chancery. It is therefore evident from the proof that the wall was never completed—that there was a lack in the weather boarding, and perhaps in the sills and posts. How great or how little the value of the unfinished work might be before the wall was carried off, we are not furnished with the means of ascertaining, by any thing found in the record, or of determining what was the value of that actually done. However strong then the complainant’s case may be, when tested by the rules of equitable jurisdiction in other respects, we cannot say that his work done was equally valuable with the wall, which he was bound to build by the covenant, and which the jury have valued by their verdict; nor can we make an assessment of value to enable him to obtain a discount for as much as it was worth; nor ought we blindly to conjecture that he had done enough to entitle him a perpetuation of his injunction in toto; but conceive that his title to remuneration for what he did under the parol agreement, as well as the value of it, can be better ascertained and liquidated in a court of law by an action brought by him for that purpose, and that this constitutes his pro *319 per remedy, if he has any.—The decree of the court below is therefore reversed with costs, and the cause is remanded with directions to dissolve the injunction with damages, and dismiss the bill; but without prejudice to any action at law, claiming remuneration for the wall alledged to be built in the bill.
A defective bill may be aided by the admissions of the answer.
If damages are recover’d for a partial breach of contract, it is not proper for a defendant to apply to chancery for an allowance to the value of the part of the contract which has been performed, his remedy is at law.
Wickliffe for plaintiff, B. Hardin for defendant.